IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| U.S. Commodity Futures Trading Commission, ) ) ) Plaintiff, ) ) v. ) Trader's International Return Network and ) David Merrick, ) ) Defendants. ) ) | No. 09 CIV _____ 6:09-cv-1743-Orl-35GJK |

COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR
PENALTIES UNDER THE COMMODITY EXCHANGE ACT

I. SUMMARY

1. Since at least July 2008, Trader's International Return Network ("TIRN"), by and through its employees and agents, and its president, David Merrick ("Merrick") (collectively, "Defendants"), have solicited U.S. residents and accepted at least $22.5 million to trade foreign currency ("forex") contracts, among other investment activities. Neither TIRN nor Merrick has ever been registered with the Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC").

2. Defendants provided customers and prospective customers with written and/or electronic documents that contained materially false and misleading statements and omissions regarding the actual investment of customer funds, the risks of trading and monthly profit returns made by then-current customers.

3. By virtue of this conduct and the further conduct described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A) and (C) of the Commodity Exchange Act ("Act"), as amended by the Food,

1

Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 6b (a)(2)(A) and (C).

4. The acts, misrepresentations, misappropriations and failures of TIRN's employees and agents, including but not limited to Merrick, in violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C), occurred within the scope of their employment or agency with TIRN. Therefore, TIRN is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

5. Merrick was a controlling person of TIRN and is liable for TIRN's violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

6. Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act. In addition, the CFTC seeks restitution, disgorgement, civil monetary penalties and such other equitable relief as this Court may deem necessary or appropriate.

7. Unless restrained and enjoined by this Court, Defendants are likely to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C). Section 6c(a) of the Act authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person

has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

9. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Defendants have transacted, and continue to transact, business in this District and certain of Defendants' transactions, acts, practices, and courses of business have occurred, are occurring, or are about to occur within this District.

### III.   THE PARTIES

10. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 et seq., and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009).

11. Defendant Trader's International Return Network is a Panamanian corporation with an address listed on its website of Edificio Advanced 099-Piso 13, Calle Ricardo Arias, Panamá City, República de Panamá. TIRN has been soliciting U.S. residents, and directing them to deposit their funds in U.S. bank accounts. Among other investment programs, TIRN offers its Real Century currency trading program. TIRN has never been registered with the Commission. The Panama National Securities Commission (Nacional de Valores de la Republica de Panama-CNV – hereinafter "CNV") has issued a public notice acknowledging that TIRN is incorporated in Panama, but also warning that TIRN is not authorized to act as a financial intermediary for securities and investments and that the CNV does not supervise or regulate it.

12. Defendant David Merrick resides in Apopka, Florida. He is president of TIRN and has never been registered with the Commission.

## IV. FACTS OF DEFENDANTS' FRAUD

13. Since at least July 2008, TIRN, on its website and/or in other distributed materials ("promotional materials"), has described itself as a "private investment club" that offers a combined investment program internationally to retail customers that includes six investment categories: namely, foreign currency, precious metals, stock, retail investments, financial instruments and venture capital.

14. TIRN's Real Century currency trading program, which is part of its combined investment program, purports to trade currencies in developed and emerging economies representing all major economic regions. Currencies are allegedly traded in pairs both versus the U.S. dollar as well as cross rates.

15. In its promotional materials, TIRN claims that TIRN:

    a. participates in "investment areas currently only available to large institutions and the very wealthy" with a "focus on the currency and exchange markets";

    b. produces profits ranging from 9% to 21% per month, depending on the amount invested; and

    c. achieved actual profits of 8.2% to 20% in October 2008 and 7.9% to 19% in November 2008, again with results depending on the amounts invested.

16. In many of its promotional materials, while touting the profits described in paragraph 15, TIRN failed to disclose the substantial risks associated with forex trading.

17. During the time period of at least July 2008 to December 7, 2008, TIRN instructed customers who sought to participate in its investment program to deposit their funds in a bank account in the name of MS, Inc. at a Florida branch of the Bank of America. Since December 8, 2008, TIRN has been instructing customers seeking to invest in its investment

program to deposit their funds in a bank account in the name of GTT Services, Inc. at Florida branches of either Washington Mutual Bank or Regions Bank. Merrick was a signatory on all of these accounts.

18. Defendants have accepted approximately $22.5 million from at least 560 customers who intended to participate in TIRN's investment program.

19. Despite the acceptance of these funds, on information and belief, TIRN and Merrick have not invested funds in any of the investments described on the TIRN website or in its written materials. TIRN's bank records from July 2008 to the present show no evidence of any such investments. Moreover, TIRN has not paid any funds to any brokers, traders, investment companies or other individuals or entities related to any investment-related activity. Rather, through multiple transfers of funds among at least seven different bank accounts, TIRN and Merrick misappropriated and used these funds for various other purposes, including providing at least $2 million to Merrick for his personal use.

20. Because no trading has apparently taken place, upon information and belief, TIRN also did not achieve the purported actual profits for October and November 2008 described in paragraph 15 above.

21. Defendants either knew the falsity of, or acted with reckless disregard for the truth of, its various representations in connection with their solicitation and acceptance of these funds.

22. Defendants either knew or acted with reckless disregard for the materiality of their omissions.

23. Neither Defendants nor the purported counterparties to the forex transactions were financial institutions, registered brokers or dealers, insurance companies, financial holding companies, or investment bank holding companies or the associated persons of financial

institutions, registered brokers or dealers, insurance companies, financial holding companies, or investment bank holding companies.

24. Some or all of Defendants' customers were not "eligible contract participants" as that term is defined in Section 1a(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2006) (an "eligible contract participant," as relevant here, is an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction in order to hedge risk).

25. The forex transactions purportedly conducted by Defendants on behalf of their customers were entered into on a leveraged or margined basis. Defendants were required to provide only a percentage of the value of the forex contracts that they purchased.

26. The forex transactions purportedly conducted by Defendants neither resulted in delivery of actual currency within two days nor created an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts purportedly remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Violations of Section 4b(a)(2)(A) and (C) of the Act as amended by the CRA:
Fraud by Misappropriation, Misrepresentations and Material Omissions**

27. The allegations set forth in paragraphs 1 through 26 are realleged and incorporated herein by reference.

28. Section 4b(a)(2) of the Act as amended by the CRA, in part, prohibits any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs

6

(1) and (2) of section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract: (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any other or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

29. Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv), Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA apply to Defendants' forex transactions "as if" they were contracts of sale of a commodity for future delivery.

30. As set forth above, Defendants cheated, defrauded and deceived or attempted to cheat, defraud or deceive their retail forex customers by making material misrepresentations and omitting material facts and by misappropriating their funds.

31. Defendants engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

32. Merrick directly or indirectly controlled TIRN and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations alleged in this Count. Consequently, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Merrick is liable for TIRN's violations of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

33. The foregoing acts, misrepresentations, misappropriations and failures of TIRN's employees and agents, including but not limited to Merrick, occurred within the scope of their employment or agency with TIRN. Therefore, TIRN is liable for these acts pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

34. Each misrepresentation or omission of material fact, or misappropriation of customer funds, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA.

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers:

A. Find Defendants liable for violating Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

B. Enter an order pursuant to Section 6c(a) of the Act restraining Defendants and all persons insofar as they are acting in the capacity of Defendants' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1. Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

2. Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

3. Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, or other property belonging to or within the custody, control or actual or constructive possession of the Defendants, wherever situated, including but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan; and

4. Requiring Defendants to repatriate from any foreign locales any assets deriving from, or related to, their investment program.

C. Enter orders of preliminary and permanent injunction enjoining Defendants and all persons insofar as they are acting in the capacity of their agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1. Engaging in conduct in violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C);

2. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

3. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

    4.     Having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

    5.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

    6.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

    7.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

    8.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

D.     Make an accounting to the Court of all of Defendants' assets and liabilities, together with all funds they received from and paid to retail forex customers and other persons in connection with retail forex or purported retail forex transactions, including the names, addresses and telephone numbers of any such persons from whom they received such funds from July 2008 to the date of such accounting, and all disbursements for any purpose whatsoever of funds received retail forex customers, including salaries, commissions, fees, loans and other

disbursements of money and property of any kind, from July 2008 to and including the date of such accounting;

E. Enter an order directing the Defendants and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act and Regulations, as described, and to repatriate from any foreign locale all assets deriving from, or related to, Defendants' investment program;

F. Enter an order requiring Defendants to disgorge to any officer appointed or directed by the Court or directly to their retail forex customers all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment interest;

G. Enter an order requiring Defendants to make restitution by making whole each and every retail forex customer whose funds were received or utilized by them in violation of the provisions of the Act as described herein, including pre-judgment interest;

H. Enter an order requiring Defendants to pay civil penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $140,000 or triple the monetary gain to each Defendant for each violation of the Act and Regulations;

I. Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

J.  Enter an Order providing such other and further relief, as this Court may deem necessary and appropriate under the circumstances.

Respectfully submitted

Date: *October 13, 2009*

*William P. Janulis*
William P. Janulis
Trial Counsel
Commodity Futures Trading Commission
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0545
(312) 596-0714
wjanulis@cftc.gov

*Rosemary Hollinger* by *Scott Williams*
Rosemary Hollinger
Associate Director
(312) 596-0520
rhollinger@cftc.gov